ROSENBERG & ESTIS, P.C.
733 Third Avenue
14th Floor
New York, New York 10017
Jack J. Rose, Esq.
John D. Giampolo, Esq.
Email: jrose@rosenbergestis.com
Email: jgiampolo@rosenbergestis.com
Tel: (212) 551-8403

*Proposed Counsel for the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Tribeca Beverage Inc., *et al.,* | : | Case No. |
| | : | |
| Debtors.[1] | : | (Joint Administration Requested) |

------------------------------X

## **DECLARATION OF HERBERT HAGEMANN PURSUANT TO LOCAL RULE 1007-2**

Herbert E. Hagemann being duly sworn, deposes and says:

1. I am Vice President of Tribeca Beverage, Inc. ("TBI") and the President and Director of Tompkins Square Distributors Inc., ("TSD" and collectively with TBI, the "Debtors"), each a debtor in a case filed before this Court.

2. I am also the holder of 50% of the shares of ownership of each Debtor.

3. I submit this declaration pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

---

[1] Debtor, Tribeca Beverage, Inc., for which the last four digits of its United States federal tax identification number is 5445, and Debtor, Tompkins Square Distributors Inc., for which the last four digits of its United States federal tax identification number is 0196, will seek joint administration of these Chapter 11 Cases, under that of Tribeca Beverage, Inc., as the lead case.

**BACKGROUND**

**Local Rule 1007-2(a)(1)**

4.      The Debtor is a in the business of distributing branded beverages in New York City market.  The Debtors business dates back to January, 1934 when the current management's grandfather Herbert Joseph Hagemann purchased a distribution business from Pepsi Cola Company and began operating in New York City.  The business continued in the family with Herbert Henry Hagemann operating the business from 1949 to 1991.  In 1985 I, Herbert Edwin Hagemann, joined the business and in 1986 my brother Donald Thaddeus Hagemann joined the business (collectively, the "Management").  Since that time, I have risen to President and Director of TSD and Vice President of TBI and Donald has become President and Director of TBI and Vice President of TSD.  When Donald and I joined the business, it had 5 trucks and 6 employees (including management) and the company was selling approximately 370,000 cases.  Donald and I undertook expanding the business, acquiring 2 additional routes and formed TBI to hold these additional routes.  Notwithstanding a relatively flat market for carbonated beverages, the Debtors businesses grew to a high point of 45,000 cases per month in August of 2001.

5.      In or about 2008, the market for carbonated soft drinks which comprise the majority of the Debtors business began to slow.  The Debtors took steps to reduce costs and increase sales but nonetheless found themselves facing an ever more competitive marketplace with new products in the form of flavored waters, seltzers, coffees and a variety of other cold beverages competing for a limited amount of refrigerated retail sales space.  Along with this, in early 2020, COVID-19 ravaged the New York City market where the Debtors business operates dramatically reducing demand.  This coupled with a mass exodus of business and residents from the CBD has forced the Debtors to their knees.

6.  Demand fell from a high of approximately 45,000 cases per month in August of 2001 to approximately 14,000 cases per month in the current month. Leaving the Debtors facing near ruin. This coupled with a litigation brought against them by the Soft Drink Union[2] arising from the retirement of the last union employee at TSD and the withdrawal from the Soft Drink Union of the last union employee at TDI which resulted in a claim of withdrawal liability in excess of $800,000 being raised against the Debtors (the "Union Dispute").

7.  While no excuse, faced with insurmountable odds, being overwhelmed and facing dwindling resources management made a decision, after the union refused to engage in negotiations with counsel initially retained by the Debtors to attempt to resolve the Union Dispute, the Debtors put off responding to a pending litigation[3] until they were faced with the threat of a disastrous default judgement. Still having preciously limited resources and precariously perched on the verge of disaster, the Debtors saw no alternative other than to seek reorganization in this Court.

8.  Accordingly, the Debtors filed these chapter 11 proceedings in order to reorganize their businesses and pay back their debts. The Debtors are optimistic that by virtue of the filing of these Chapter 11 cases, they will have the best chance to repay their debts in a manner that allows them to maximize the value of their assets for the benefit of all creditors.

**INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007**

9.  In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

---

[2] The Soft Drink & Brewery Workers Union, Local 812 Retirement Fund and The Trustees of the Soft Drink & Brewery Workers Union, Local 812 Retirement Fund (the "Soft Drink Union").

[3] *The Soft Drink & Brewery Workers Union, et al. v. Tribeca Beverage, Inc., et al*, case no. 19-cv-07254 in the U.S. District Court Eastern District of New York (Central Islip).

**Local Rule 1007-2(a)(1)**

10. The Debtor maintains an office at 650 Rush Avenue, Bronx, New York.

**Local Rule 1007-2(a)(2)**

11. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

**Local Rule 1007-2(a)(3)**

12. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

13. A list of the names and addresses of the Debtors' respective 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto as **Exhibit A**.

**Local Rule 1007-2(a)(5)**

14. The following are the five largest secured creditors for each of the Debtors.

15. TBI has only two secured creditors.

| Secured Creditor | Amount of Secured Claim | Description |
|---|---|---|
| JPMorgan Chase<br>P.O. Box 99001022<br>Louisville, KY 40290<br>Acct No. 451000000000 | $60,998.62 | Business line of credit secured by UCC-1 filing against all inventory, chattel paper, accounts, equipment, general intangibles, owned or after acquired, all proceeds thereof (including insurance, general intangibles and other accounts proceeds). |
| U.S. Small Business Administration ("SBA"), 409 3rd Street, SW, Washingon, DC 20416 | $89,000 | SBA and EIDL loan, account no. 3305978405, secured by UCC filing against all general |

| | | business assets, trucks, furniture fixtures, machinery. |
|---|---|---|

16. TSD has only one secured creditor.

| Secured Creditor | Amount of Secured Claim | Description |
|---|---|---|
| U.S. Small Business Administration ("SBA"), 409 3rd Street, SW, Washingon, DC 20416 | $78,800 | SBA and EIDL loan, account no. 3305981908, secured by UCC filing against all general business assets, trucks, furniture fixtures, machinery. |

**Local Rule 1007-2(a)(6)**

17. Debtors' primary assets and liabilities consist of the following.

18. TBI's primary assets set forth above total and its primary liabilities totaling consist of the following.

**Primary Assets: $250,817.75**

TBI's Pepsi distribution route valued at: $191,742

Intercompany receivables owed by TSD: $51,475.75

One 2004 International truck valued at: $7,500.00

Office furniture and electronics valued at: $100.00

**Primary Liabilities: $237,353.33**

JPMorgan Chase secured credit balance: $60,998.62

EIDL SBA secured loan balance: $89,000

Loan balance owed to Herbert E. Hagemann: $35,873.43

Loan balance owed to Donald Hagemann: $35,873.43

Soft Drink Union's disputed litigation claim: $0.00

Chase Commercial Loan/SBA PPP Loan: $15,572.00

        Chase Bank checking acct 0282 overdrawn: $35.85

19.     TSD's primary assets set forth above total and its primary liabilities totaling consist of the following.

**Primary Assets**: **$232,212.51**

        Cash in its business checking account in the amount of: $184.51

        Pepsi distribution route valued at $209,428

        Three 2004 International Trucks valued at a total of $22,500

        Office furniture and electronics valued at $100.00

**Primary Liabilities: $172,426.38**

        EIDL SBA secured loan balance:  $78,800

        Loan balance owed to Herbert E. Hagemann: $3,937.11

        Loan balance owed to Donald Hagemann: $3,937.11

        Employee wage Julio Canino Lopez: $5,000.00

        Soft Drink Union's disputed litigation claim: $0.00

        Intercompany claim owed to TBI: $51,475.75

        Chase Commercial Loan/SBA PPP Loan:  $10,055.00

        JPMorgan Chase credit card balance:  $16,037.82

        JPMorgan Chase credit card balance:  $3,183.59

20.     Balance Sheets for each of TBI and TSD are annexed hereto as **Exhibits B** and **C**, respectively.

**Local Rule 1007-2(a)(7)**

21.     There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

22. None of the Debtors' property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

23. 650 Rush Avenue, Bronx, New York.

**Local Rule 1007-2(a)(10)**

24. The Debtors' substantial assets, its books and records are located at 650 Rush Avenue, Bronx, New York or with the Debtors accountants; and no property of the Debtors is located outside the territorial limits of the United States

**Local Rule 1007-2(a)(11)**

25. The following actions are pending against the Debtors.

*The Soft Drink & Brewery Workers Union, et al. v. Tribeca Beverage, Inc., et al*, case no. 19-cv-07254 in the U.S. District Court Eastern District of New York (Central Islip).

**Local Rule 1007-2(a)(12)**

26. The Debtor's management consists of Herbert and Donald Hagemann of the Debtors.

**Local Rule 1007-2(b)(1)**

27. The estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the filing of the chapter 11 petition is $0.00 for TBI and $2,800.00 for TSD.

**Local Rule 1007-2(b)(2)**

28. The amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the chapter 11 petition to officers, stockholders and directors is $4,158.00 for TBI and $3,200.00 for TSD.

**Local Rule 1007-2(b)(3)**

29. Attached hereto as **Exhibits D** and **E**, respectively, are schedules for each of TBI and TSD for the thirty (30) day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 13, 2021
      New York, New York

_____
HERBERT E. HAGEMANN